# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| DENNIS BURTON, ) | |
| ) | |
| Debtor. ) | Case No. 08-01403 |
| ) | |
| ) | |
| CENTRA BANK, INC. ) | |
| and MILAN PUSKAR, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. Proc. No. 09-00034 |
| ) | |
| DENNIS M. BURTON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Centrua Bank, Inc. and Milan Puskar filed a three-count adversary complaint against Dennis M. Burton (the "Debtor") to except debts from the Debtor's discharge under 11 U.S.C. § 523(a)(4) on grounds of defalcation. The Debtor seeks to dismiss all counts of the adversary complaint on the grounds that the Bank and Mr. Puskar have failed to state a claim.

For the reasons stated herein, the court will grant in part and deny in part the Debtor's Motion to Dismiss.

## I. STANDARD OF REVIEW

In adjudicating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, and a court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent

1

with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). This principle, however, is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Defeating a motion to dismiss under Rule 12(b)(6) requires the plaintiff to provide more in the complaint than "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The factual allegations in the complaint "must be enough to raise a right of relief above the speculative level" *id.* at 1959, and be enough to "state a claim to relief that is plausible on its face." *Ashcroft*, 129 S. Ct. at 1949. Determining whether a complaint is "facially plausible" is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.* at 1950.

## II. BACKGROUND

The Debtor specializes in radiology. In March 2004, the Debtor incorporated Amerirad, Inc., of which he is the president and sole stockholder, to provide radiology services. To obtain operating funds for Amerirad, the Debtor caused Amerirad to execute four notes with Centra Bank: (1) $1,000,000 on July 27, 2004, (2) $1,000,000 on October 3, 2005, (3) $298,000 on November 30, 2006, and (4) $750,000 on December 26, 2006. Each note is personally guaranteed by the Debtor. The fourth note is also guaranteed by Milan Puskar.

All four notes are secured by, among other things, Amerirad's accounts and receivables. Importantly, the security agreement accompanying the notes defines "Collateral" as including "[a]ll rights . . . [Amerirad] now has or may have in the future to the payment of money[.]" The security agreement further provides that:

> Upon the occurrence of any default under this Agreement, [Amerirad] hereby irrevocably . . . appoints [Centra Bank] . . . as [Amerirad's] true and lawful attorney-in-fact with full power of substitution . . . to exercise the following powers with respect to the Collateral:
>
> (1) To demand, sue for collection, receive, and give acquittance for any and all monies due or owing with respect to the Collateral;
> . . .
> (3) To settle, compromise, prosecute, or defend any action or proceeding with respect to the Collateral;
> (4) To sell, transfer, assign or otherwise deal in or with the Collateral or the proceeds thereof, as fully as if [Centra Bank] were the absolute owner thereof . . . .

(Compl. ¶ 36.).

In August 2008, Amerirad defaulted on all four notes. On August 27, 2008, Centra Bank issued a default notice to Amerirad demanding that each of the notes be paid in full. On September 5, 2008, the Debtor filed his Chapter 7 bankruptcy petition. As a guarantor on the December 2006 note, Milan Puskar paid the $722,253.57 balance in full on September 29, 2008. As of February 13, 2009, Centra Bank was still owed $1,429,087.45.

### III. DISCUSSION

Centra Bank and Milan Puskar assert that the Debtor took at least $400,000 from Amerirad for his personal use, which is reflected as an account receivable on Amerirad's books. In their request for relief, they ask the court to enter a money judgments in their favor and to declare both judgments excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(4) on the grounds of defalcation.

Section 727(b) of the Bankruptcy Code provides that a Chapter 7 discharge relieves a debtor "from all debts" that arose before the filing of the bankruptcy petition. 11 U.S.C. § 727(b). Not every debt, however, is subject to being discharged; § 523(a) of the Bankruptcy Code provides nineteen exceptions whereby a pre-petition debt will remain valid after entry of a debtor's discharge order. Because these exceptions to discharge contravene the "fresh start" policy of the Bankruptcy Code, they are construed narrowly in favor of the debtor. *E.g.*, *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 983 (3d Cir. 1997) ("[E]xceptions to discharge are to be strictly construed in favor of the debtor."); *Ostrum v. Porter*, No. 03-118; 2008 Bankr. LEXIS 109 at *8 (Bankr. N.D.W. Va. Jan. 10, 2008) (same). In particular, § 523(a)(4) provides:

> A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt -
> . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity . . . .

11 U.S.C. § 523(a)(4).

To prevail on a § 523(a)(4) claim, the movant must establish, by a preponderance of the evidence, the existence of both: (A) a fiduciary relationship and (B) a defalcation while acting in that fiduciary capacity. *E.g.*, *Grogan v. Garner*, 498 U.S. 279, 282-83 (1991) (applying a preponderance of the evidence standard to § 523(a) causes of action); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996) ("[U]nder § 523(a)(4), Fowler Brothers had to establish the following two elements to prevent the discharge of Mr. Young's debt: a fiduciary

3

relationship between Fowler Brothers and Mr. Young and fraud or defalcation committed by Mr. Young in the course of that fiduciary relationship.").

Regarding the existence of a fiduciary relationship, the definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 U.S. App. LEXIS 4743 at *7 (4th Cir. March 19, 1999) (citing *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)).  Under the federal common law, the term "fiduciary" includes express or technical trusts:

> [The term "fiduciary capacity" as used in § 523(a)(4)] has been fixed by judicial construction for nearly a century. . . . [T]he statute "speaks of technical trusts, and not those which the law implies from contract."  The scope of the exception was to be limited accordingly.  Through the intervening years that precept has been applied by this court in varied situations with unbroken continuity.  It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto. . . . "The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created."

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934) (citations omitted); *see also R.E. Am., Inc., v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997) ("[T]he defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor.").

Limiting the definition of "fiduciary" in § 523(a)(4) is important because to expand the definition of fiduciary to include all those upon whom the law imposes fiduciary duties would eviscerate the bankruptcy discharge.  *E.g.*, *Chapman v. Forsyth*, 43 U.S. 202, 208 (1844) ("If the act embrace such a debt, it will be difficult to limit its application. It must include all debts . . . . where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. . . . But this is not the relation spoken of in [§ 523(a)(4)].").  Thus, some courts hold that to be a "fiduciary" under § 523(a)(4), the debtor must have "either expressly signified his intention at the outset of the transaction, or was clearly put on notice by some document in existence at the outset, that he was undertaking the special responsibilities of a trustee to account for his actions over and above the normal obligations that contracting parties have to each other in a commercial transaction." *Bamco v. Reeves (In re Reeves)*, 124 B.R. 5, 10 (Bankr. D.N.H. 1990).

4

Even in the absence of an express or technical trust, however, "the existence of a state statute or common law doctrine imposing trust-like obligations on a party may, at least in some circumstances, be sufficient to create a technical trust relationship for purposes of section 523(a)(4)." 4 *Collier on Bankruptcy* ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2009). Thus, certain fiduciary relationships exists that are determined to be so special that they fall within the meaning of "fiduciary" in § 523(a)(4) despite the absence of an express trust or other actual, preexisting notice to the debtor that he is holding property in trust for another. These relationships have included an ambassador and the property of the ambassador's represented country, *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), a financial advisor committing fraud and found to be a fiduciary by default in a state court judgment, *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17 (4th Cir. 1997), real estate agents handling closing funds, *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir. 1954), attorneys handling client funds, *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162 (2d Cir. 1999), and those acting under a power of attorney to an incompetent person, *Ostrum v. Porter*, No. 03-118; 2008 Bankr. LEXIS 109 (Bankr. N.D.W. Va. Jan. 10, 2008).

As stated by the Court of Appeals for the Second Circuit, the reason certain types of statutory or common law fiduciary relationships are encompassed within the meaning of "fiduciary" as used in § 523(a)(4) is because the focus of *Chapman* and *Davis*, *supra*, was to prevent ordinary commercial debts from being excepted from discharge, and those cases never cast "serious doubt on the fact that certain relationships not constituting actual trusts are within the defalcation exception." *Hayes*, 183 F.3d at 169; *see also In re Marchiando*, 13 F.3d 1111, 1115-16 (7th Cir. 1994) (stating that a fiduciary relationship that imposes duties in advance of a breach by the debtor is within the scope of § 523(a)(4)); *Hamby*, 217 F.2d at 80 (holding that the term fiduciary in § 523(a)(4) encompasses those in a common law fiduciary relationship that have been entrusted with funds such that the relationship between the parties is more than merely debtor-creditor).

Therefore, the term "fiduciary," as used in § 523(a)(4), encompasses both express and technical trusts, and those statutory and common law fiduciary duties that impose trust-like obligations on a party in advance of the party's alleged wrongdoing.

Regarding the meaning of "defalcation" as used in § 523(a)(4), the Fourth Circuit defined the contours of that tort:

> Defalcation is "the failure to meet an obligation" or "a nonfraudulent default." To be defalcation for purposes of 11 U.S.C. § 523(a)(4), an act need not "rise to the level of . . . 'embezzlement' or even 'misappropriation.'" Thus, negligence or even an innocent mistake which results in misappropriation or failure to account is sufficient.

*Uwimana)*, 274 F.3d at 811; *see also Ansari*, 113 F.3d at 20 ("'[A] 'defalcation' for purposes of this statute does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'") (citation omitted).

In this case, Centra Bank and Mr. Puskar allege that the Debtor committed defalcation by: (A) violating his fiduciary duty to Amerirad by taking Amerirad's funds for his personal use; (B) violating his fiduciary duty to Amerirad, which prevented Amerirad from paying Centra Bank, which, due to the Debtor's personal guarantees, constitutes defalcation with respect to Centra Bank; and (C) violating his fiduciary duty to all creditors by using the funds of Amerirad for his personal benefit at a time when Amerirad was in the zone of insolvency.

**A.     The Debtor's Alleged Defalcation of Amerirad**

In their first cause of action, Centra Bank and Mr. Puskar assert that the Debtor took $400,000 – or more – from Amerirad for his personal use, which, because he is the principal of Amerirad, constitutes a breach of his fiduciary obligations to Amerirad. Under the terms of the parties' security agreement, Centra Bank and Mr. Puskar contend that they have the right to bring this claim against the Debtor as the attorney-in-fact or substitute of Amerirad, or as owner of Amerirad's rights.

In his Motion to Dismiss, the Debtor claims, among other things, that even if Centra Bank and Mr. Puskar have the ability to assert causes of action belonging to Amerirad against him for his alleged personal use of corporate funds,[1] a corporate officer or director is not a "trustee" of corporate funds and no trust *res* ever existed before his alleged wrongdoing on which to base a breach of an express or technical trust.

---

[1.] The Security Agreement executed between the parties plainly gives Centra Bank the right to assert causes of action belonging to Amerirad against the Debtor for monies due or owing. The Debtor asserts that no cause of action may be stated against him on behalf of Amerirad on the grounds that Amerirad is not a named plaintiff in this case. The court does not believe that this is a dispositive defect on which to grant a motion to dismiss.

6

By statute, an officer of a West Virginia corporation, when performing in the officer's official capacity, must "act: (1) In good faith; (2) With the care that a person in a like position would reasonably exercise under similar circumstances; and (3) In a manner the officer reasonably believes to be in the best interest of the corporation."  W. Va. Code § 31D-8-842; *see also* § 31D-8-830 (settling forth similar duties for directors).  In examining the scope of an officer or director's duty to the corporation and its shareholders the Supreme Court of Appeals for West Virginia has stated that the duty encompasses fiduciary obligations:

> "While the officers and directors of a business corporation are accorded a rather broad latitude in the conduct of the affairs of the corporation, they occupy a fiduciary relationship toward it and its shareholders. . . ."

Syllabus Pt. 4, *State ex rel. Smith v. Evans*, 547 S.E.2d 278 (W. Va. 2001) (quoting Syllabus Pt. 2, *Masinter v. WEBCO Co.*, 262 S.E.2d 433 (W. Va. 1980)); *see also Airlines Reporting Corp. v. Ellison (In re Ellison)*, 296 F.3d 266, 271 (4th Cir. 2002) ("[T]he Ellisons, when acting as officers and directors of Sovereign Travel, 'occupied a fiduciary relationship toward [Sovereign Travel]' under West Virginia law.") (citation omitted).

Although corporate officers and directors act in a fiduciary capacity with respect to the corporation and its shareholders, the Supreme Court of Appeals for West Virginia has recognized that officers and directors "are not technically trustees, but are agents who bear a relation of trust and confidence to their principal."  *Young v. Columbia Oil Co.*, 158 S.E. 678, 681 (W. Va. 1937); *see also Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1126 (9th Cir. 2003) (explaining that under California law, "although officers and directors are imbued with the fiduciary duties of an agent and certain duties of a trustee, they are not trustees with respect to corporate assets."); *Miramar Resources v. Shultz (In re Shultz)*, 208 B.R. 723, 729 (Bankr. M.D. Fla. 1997) ("[A]s a director of Mirmar, Defendant may have been a fiduciary, but not a trustee under traditional Delaware corporate doctrine."); 18B Am. Jur. 2d *Corporations* § 1460 (2008) ("In a broad sense, the directors and officers of a corporation are its agents. While they may not be in a strict sense trustees, they occupy a fiduciary, or more exactly a quasi-fiduciary, relation to the corporation and its shareholders."); *Restatement (Third) Trust* § 5 (2003) ("The following are not trusts: . . . (g) corporations, partnerships, and other business associations . . . .").  Corporate officers and directors "do not hold title to the property of the corporation and therefore are not trustees." *Restatement (Third) Trust* § 5 cmt. f.

7

In this case, when Amerirad obtained loan funds from Centra Bank, the Debtor had fiduciary obligations to deal with corporate property for the benefit of Amerirad and its shareholders. The Debtor was not a trustee over the loan proceeds. This fact, however, is not fatal to Centra Bank's and Mr. Puskar's claim under § 523(a)(4). The claim can survive the Debtor's motion to dismiss so long as the fiduciary obligation owed by the Debtor to Amerirad is not based on an ordinary commercial debt, the fiduciary duty preexisted the alleged wrong, and the relationship is one that imposes trust-type obligations.

The Court of Appeals for the Fifth Circuit addressed a similar factual circumstance in the case of *In re Moreno*, 892 F.2d 417 (5th Cir. 1990). Moreno was the president of Petroleum Energy Equipment Company ("PEEC"), which filed a Chapter 11 case and was being administered by a Chapter 11 trustee. *Id.* at 418. Moreno also filed bankruptcy, and it was discovered that he owed PEEC $47,000 for personal corporate advances, and entities related to Moreno owed PEEC over $150,000. *Id.* After Moreno filed a personal Chapter 7 bankruptcy, PEEC's trustee sought to except the debts owed by him to PEEC from his discharge based on acts of defalcation under § 523(a)(4). *Id.* at 421. The Fifth Circuit determined that Moreno's fiduciary duty to PEEC "encompassed, at least, a responsibility not to lend PEEC's money to himself or corporations controlled by him on less than an arms-length basis." *Id.* This duty was sufficiently akin to the trust-type obligations imposed by an express or technical trust to satisfy the "fiduciary" requirement of § 523(a)(4). *Id.*

This court agrees. By statute, a corporate officer must act "[i]n a manner the officer reasonably believes to be in the best interest of the corporation." W. Va. Code § 31D-8-842. The Supreme Court of Appeals for West Virginia has long recognized that corporate officer and directors occupy a fiduciary relationship toward the corporation and its shareholders. *Evans*, 547 S.E.2d 278. Furthermore, the Supreme Court of Appeals has expressly recognized that corporate officers and directors have trust-type obligations even though they are not technically trustees. *Young*, 158 S.E. at 681. For these reasons, and based on the modern trend in federal jurisprudence to include certain fiduciary, trust-type relationships that do not rise to the level of an express or technical trust within the scope of § 523(a)(4)'s definition of "fiduciary," this court holds that the fiduciary relationship between a corporate officer and/or director to the corporation and its shareholders is a trust-type obligation that satisfies the "fiduciary" requirement of § 523(a)(4).

8

Having determined that the requisite fiduciary duty exists, the next step is to determine if Centra Bank and Mr. Puskar have sufficiently alleged an act of defalcation. Like the Fifth Circuit in *Moreno*, 892 F.2d at 421, this court finds that the Debtor's fiduciary obligation to Amerirad encompassed, at least, a duty not to lend Amerirad's money to himself on a less than arms-length basis. According to the Complaint, the Debtor used Amerirad's funds to sustain his own lavish lifestyle and image by using Amerirad's money to charter airplanes ($155,000), pay for limousine services ($38,000), import musicians and expensive wines, and pay for expensive travel, hotels, lavish gifts, tailgate parties, sports tickets and the like. (Compl. ¶¶ 26, 42). Accordingly, Centra Bank and Mr. Puskar have stated a claim upon which relief may be granted in Count I of their Complaint.

**B.     Debtor's Alleged Breach of Fiduciary Duties to Centra Bank**

In Count II of their Complaint, Centra Bank and Mr. Puskar argue that the Debtor owes fiduciary obligations to Amerirad as a corporate officer and director. The further alleged that the Debtor breached his fiduciary duties to Amerirad by "diverting" corporate money for his personal use. Based on this alleged breach of fiduciary duty – and because the Debtor personally guaranteed the notes to Centra Bank – they contend that the Debtor is liable to Centra Bank for defalcation within the meaning of 11 U.S.C. § 523(a)(4).

Count II of the Complaint appears to be based on two cases decided by the Court of Appeals for the Fourth Circuit, *Airlines Reporting Corp. v. Ellison (In re Ellison)*, 296 F.3d 266 (4th Cir. 2002) and *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493 (4th Cir. 2008). In *Ellison*, 296 F.3d at 270-71, the court determined that a personal guarantee of a corporate debt was excepted from discharge when: (1) a personal guarantee existed; (2) the indebtedness arose due to defalcation or "the breach of a fiduciary relationship between two corporations"; (3) the debtor was personally responsible for the conduct that gave rise to the corporation's breach of defalcation; and (4) the debtor's conduct itself was a breach of the debtor's fiduciary duty to the corporation. These factors were reiterated in *Strack*, 524 F.3d at 500.

In this case, however, neither *Ellison* nor *Strack* is applicable. Quite simply, Centra Bank and Mr. Puskar have failed to show that Amerirad owed any fiduciary duties, or in any way breached an express or technical trust with Centra Bank. Thus, elements two and three of the above-stated test have not been met. Therefore, the court will dismiss Count II of the Complaint.

**C.     Fiduciary Duties in the "Zone of Insolvency"**

9

In Count III, Centrua Bank and Mr. Puskar contend that, at the time the Debtor allegedly diverted Amerirad's funds for his personal use, Amerirad was in the zone of insolvency, and, thus, as Amerirad's president, the Debtor owed a fiduciary duty to Centrua Bank sufficient to sustain a cause of action under § 523(a)(4).

It is axiomatic that a corporation is run with a view toward maximizing shareholder wealth.  When a corporation is insolvent, however, creditors – not shareholders – become the corporation's primary risk bearers because shareholders have essentially lost their bet on the company.  The activities of an insolvent corporation are, therefore, gambles with the corporate creditors' right to payment.  If an officer or director is faithful to the directive that the purpose of a corporation's existence is to maximize shareholder wealth, then officers and directors of an insolvent corporation "may be tempted to make very risky investments since speculator returns – however unlikely – would inure to the benefit of the shareholders, while losses wold be borne by creditors."  Frederick Tung, *The New Death of Contract: Creeping Corporate Fiduciary Duties for Creditors*, 57 Emory L. J. 809, 820 (2008).

To protect creditors of an insolvent corporation, the Supreme Court of Appeals of West Virginia has stated that – when a corporation becomes insolvent – the fiduciary duties of the officers directors shifts from the stockholders to the creditors:

> The law by great weight of authority seems to be settled that when a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by fact of insolvency, become trustees for the creditors, and that they then cannot by transfer of its property or payment of cash, prefer themselves or other creditors . . . .

Syllabus Pt. 4, *Arnold v. Knapp*, 84 S.E. 895, 899 (W. Va. 1915); *see also FDIC v. Sea Pines Co.*, 692 F.2d 973, 976-77 (4th Cir. 1982) (same); *Davis v. Woolf*, 147 F.2d 629, 633 (4th Cir. 1947) (same); *Little Switzerland Brewing Co. v. Oxley*, 197 S.E.2d 301, 306 (W. Va. 1973) (same).

When describing the officers and directors of an insolvent corporation as "trustees for the creditors," the court is mindful that the Supreme Court of Appeals is imposing fiduciary duties on the officers and directors that favor corporate creditors.  This court does not believe that the Supreme Court of Appeals intended to impose a full trust relationship between creditors and the officers and directors of an insolvent corporation for the following two reasons.

First, the Supreme Court of Appeals of West Virginia has subsequently recognized that the relationship between officers/directors and the corporation/shareholders is a fiduciary one, but the officers and directors "are not technically trustees" for the benefit of the corporation/shareholders. *Young*, 158 S.E. at 681. This conclusion is consistent with the instruction in *Restatement (Third) Trusts* § 5 (2003), that corporations are not trusts. It is illogical to impose more stringent duties of a trustee administering trust assets on officers and directors for the benefit of corporate creditors than those officers and directors bear to their own corporation and shareholders. Indeed, as recognized by the Delaware Supreme Court in *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007), when a corporation becomes insolvent it is the creditors that effectively take the place of the shareholders as the residual, economic beneficiaries of corporate assets.

Second, when stating that the assets of a insolvent corporation constitute a trust fund for the benefit of creditors, the term "trust fund" is only used by way of analogy or metaphor. *E.g.*, *Hollins v. Brierfield Coal & Iron Co.*, 150 U.S. 371, 381-82 (1893) ("While it is true language has been frequently used to the effect that the assets of a corporation are a trust fund held by a corporation for the benefit of creditors, this has not been to convey the idea that there is a direct and express trust attached to the property. [T]hey 'are not in any true and complete sense trusts, and can only be called so by way of analogy or metaphor.'") (citation omitted); 7 *Collier on Bankruptcy* ¶ 1108.09[4][a] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2009) ("The trust fund doctrine is an analogy and is not, and should not be, interpreted literally; the assets of an insolvent corporation are not an actual trust, and the directors are not actually trustees whose conduct is governed by the very strict fiduciary standards of the law of trusts.").

The origins of the "trust fund" corporate insolvency doctrine can be traced to *Wood v. Dummer*, 3 Mason, 308 (1824), which concerned directors of a bank that declared a substantial dividend for themselves at a time when the bank was being dissolved. Justice Story declared that the "capital stock of banks is to be deemed a pledge or trust fund for the payments of the debts contracted by the bank." *Id.* Thus, according to some commentators, the decision was an equitable, ad hoc response to address roguish behavior and never intended to create a true trust relationship. *E.g.*, Henry T.C. Hu and Jay Lawrence Westbrook, *Abolition of the Corporate Duty to Creditors*, 107 Colum. L. Rev. 1321, 1332-33 (2007) ("Wood was an ad hoc response, a conceptually casual treatment of monies that were in the corporate till pledged in some ill-

defined way to creditors."). Indeed, the corporate trust fund doctrine is "often poorly understood" and "'perhaps no concept has created as much confusion in the field of corporate law . . . .'" *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1269 (5th Cir. 1983) (citation omitted). The "trust fund doctrine was established principally to permit a court of equity to marshal and distribute a corporation's assets upon its insolvency and dissolution in much the same way as would a modern bankruptcy court [at a time when] federal bankruptcy and state corporation laws were as yet ill-established." *Id.*

Concluding that corporate officers and directors of a West Virginia corporation are not trustees for the benefit of corporate creditors, of course, does not mean that corporate officers and directors of an insolvent corporation are not "fiduciaries" to their creditors as the term is used in § 523(a)(4). West Virginia and Fourth Circuit precedent plainly states that a fiduciary relationship exists between the officers and directors of an insolvent corporation and its creditors. *Sea Pines Co.*, 692 F.2d at 976-77; *Arnold*, 84 S.E. at 899. In fact, in *Gheewalla*, 930 A.2d 92, the Delaware Supreme Court held that creditors of an insolvent corporation have standing to bring derivative claims of shareholders against the corporation and its officers and directors for a breach of a fiduciary duty. Considering this court's conclusion, *supra*, that an officer or director's breach of a fiduciary duty to the corporation can constitute a sufficiently trust-like obligation upon which to find the existence of a fiduciary relationship under § 523(a)(4), and considering further that shareholders can assert the same rights as the corporation for a breach of these trust-like obligations, the court likewise holds that creditors, who are in effect standing in the place of shareholders, are entitled to assert the same rights of shareholders. Consequently, the fiduciary, trust-like obligations owed by directors and officers of an insolvent corporation to the corporation's creditors qualifies as the type of fiduciary relationship contemplated in § 523(a)(4).

In this case, construing all factual inferences in the Complaint in favor of Centra Bank and Mr. Puskar, it is possible that Amerirad was insolvent before the Debtor's alleged acts of defalcation, and, consequently, that the Debtor, as the officer and director of Amerirad, owed a fiduciary duty to Amerirad's creditors that preexisted his alleged acts of defalcation. Therefore, the Court finds that Centra Bank and Mr. Puskar have stated a claim for relief in Count III of their Complaint.

## IV. CONCLUSION

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021 that grants in part and denies in part the Motion to Dismiss.